1  Kevin A. Darby (NV SBN 7670)
2  Tricia M. Darby (NV SBN 7956)
   DARBY LAW PRACTICE, LTD.
3  4777 Caughlin Parkway
   Reno, Nevada 89519
4  Phone: (775)322-1237
   Facsimile: (775) 996-7290
5  kevin@darbylawpractice.com
6  Attorneys for Petitioning and Joining Creditors

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| In re: | CASE NO.:  BK-N-15-51635-btb |
|---|---|
| WATTENBERG OIL & GAS INVESTMENT GROUP, LLC , | Chapter 11 |
| Debtor. | **EMERGENCY MOTION: (1) TO APPOINT INTERIM CHAPTER 11 TRUSTEE FOR GAP PERIOD; (2) TO APPOINT PERMANENT TRUSTEE UPON ENTRY OF AN ORDER OF RELIEF; (3) TO AUTHORIZE INTERIM CHAPTER 11 TRUSTEE TO SEIZE MANAGEMENT AND CONTROL OF ELITE ENERGY ENGINEERING, LLC; AND (4) FOR ORDER BARRING JOHN ASTENGO AND JOHN W. POWELL FROM INTERFERRING WITH BUSINESS OPERATIONS** |
| _____/ | Hearing Date:  TBD<br>Hearing Time:  OST Requested |

DONALD KEITH MOONEY, as Trustee of the Arkansas Urology, PA PSP & 401k, GERARD GEOSCIENCES, INC, GERARD FAMILY LLC, LEO & MELINDA GERARD and JOHN E. ATKINS (collectively, the "Petitioning Creditors") and BILL NACHATILO, MIKE JESSEN, MATT JESSEN, WR BOB ATKINS, JAY ATKINS, and MARK THURMAN (collectively, the "Joining Creditors"),each unsecured creditors of Wattenberg Oil & Gas Investment Group, LLC (the "Debtor"), and by and through their Counsel KEVIN A. DARBY, ESQ. of Darby Law Practice, Ltd., hereby move this Court for entry of an order: (1) appointing an

interim Chapter 11 trustee to preserve, and prevent loss of, property of the estate pending an entry of an order for relief; (2) appointing the interim trustee as a permanent Chapter 11 trustee upon entry of an order for relief; (3) authorizing the interim trustee to seize management and control of Elite Energy Engineering, LLC; and (4) barring John Astengo and John W. Powell from interfering with the business of the Debtor or Elite Energy Engineering, LLC.  This Motion is based on 11 U.S.C. §§105, 303 and 1104, and is supported by the Declaration of Donald Keith Mooney and the following points and authorities.

## POINTS AND AUTHORITIES

I. INTRODUCTION

The Debtor, Wattenberg Oil & Gas Investment Group, LLC, and its wholly owned subsidiary, Elite Energy Engineering, LLC ("EEE"), have been and continue to be the victims of gross mismanagement and are at risk of further immediate harm.  The gross mismanagement of Debtor and EEE, which has occurred at the hands of John Astengo and John W. Powell, includes, but is not limited to, the following:

- The failure to pay rent for October, November and December of 2015;
- The failure to pay employees payroll and benefits;
- The failure to pay payroll and other taxes;
- The failure to maintain adequate (if any) books and records;
- The misuse and misappropriation of hundreds of thousands (if not millions) of dollars belonging to Debtor and EEE;
- The apparent abandonment of Debtor and EEE.

In order to preserve the property of this estate, and to prevent further loss, it is necessary that an interim Chapter 11 trustee be appointed during the gap period between the filing of this involuntary chapter 11 case, and the entry of an order for relief.  Such trustee's interim appointment should further become permanent upon entry of an order for relief in this case.  In the meantime, the interim trustee should be empowered and authorized to seize control of both the Debtor, and its wholly owned subsidiary, EEE.  In turn, John Astengo and John W. Powell should be barred from participating in the management of these companies.

## II. BACKGROUND FACTS

1. On December 14, 2015, the Petitioning Creditor filed an involuntary Chapter 11 bankruptcy petition against the Debtor, which was joined by each of the Joining Creditors.

2. Debtor is primarily a holding company, with its most significant asset being 100% of the membership interest in EEE.

3. EEE is an energy management and manufacturing company that specializes in cogeneration. Cogeneration is a method of generating multiple forms of usable energy at the same time. EEE specializes in a form of cogeneration called combined heat and power or CHP for short. CHP increases efficiency by using waste heat to generate hot water for use in boilers, water heaters, etc. EEE manufactures EnviroGen Energy Modules, which are self-contained micro power plants with minimal noise and emissions deliver highly reliable levels of ultra-clean combined heat and power.

4. EEE is located in Carson City, Nevada. Elite's manufacturing and engineering facility includes a 33,000 square-foot custom fabrication and production facility, and a 20,000 square-foot precision sheet metal fabrication shop.

5. Pre-petition, the management of Debtor and EEE was vested with John Astengo and John Powell. Mr. Astengo and Mr. Powell used the Debtor as a vehicle to raise capital for the acquisition and operation of EEE.

6. The Petitioning Creditors and Joining Creditors alone lent over $4,400,000 to Wattenberg, as follows:

| Creditor | Claim Amount |
|---|---|
| Keith Mooney | $2,008,168 |
| Leo Gerard | $1,100,000 |
| John Atkins | $750,000 |
| Bob Nachatilo | $480,000 |
| Mike Jensen | $25,000 |
| Matt Jensen | $25,000 |
| WR Bob Atkins | $20,000 |
| Jay Atkins | $20,000 |
| Mark Thurman | $10,000 |
| **Total** | **$4,438,168** |

7. The Petitioning Creditors and Joining Creditors are informed and believe that after raising over four million dollars in capital, Mr. Astengo and Mr. Powell have abandoned Debtor and EEE. EEE has not paid its employees, taxes or rent for many months. The total arrears in rent, payroll, benefits and taxes now exceeds $200,000. In addition, it appears hundreds of thousands of dollars are unaccounted for, and there are no books and records adequately tracing the millions of dollars raised by Debtor.

8. Despite the harm already done by Mr. Astengo and Mr. Powell, EEE still has the potential to be a profitable and successful business.

9. Petitioning Creditors and Joining Creditors understand that additional capital will be necessary to preserve EEE's assets and business, and they are in the process of attempting to obtain financing to be used by a trustee in this case to managet and operate EEE.

**III.  LEGAL ARGUMENT**

**A.  A Trustee Should Be Appointed During The "Gap Period" Of This Involuntary Chapter 11 Case.**

Section 1104(a) of the Bankruptcy Code authorizes the Court to appoint a trustee in Chapter 11 cases for "cause" at "any time after the commencement of the case but before confirmation of a plan…." 11 U.S.C. § 1104(a). Under the statute, "cause" specifically includes "fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management…." 11 U.S.C. § 1104(a)(1).

In the context of involuntary Chapter 11 bankruptcy cases, a trustee may be appointed for cause at any time after the filing of the involuntary petition—including during the "gap period" between the filing of the involuntary petition and the court's entry of an order for relief. The filing of the involuntary petition commences the case and therefore triggers the application of Section 1104. *See* In re Prof'l Accountants Referral Servs., Inc., 142 B.R. 424 (Bankr. D. Colo. 1992) (recognizing statutory authority to appoint a Chapter 11 trustee during the gap period pursuant to 11 U.S.C. § 1104); *see also Collier on Bankruptcy* ¶303.29 (15th ed. 2010) (same).

Section 105 of the Bankruptcy Code provides additional support for appointing a Chapter 11 trustee during the gap period. Prof'l Accountants Referral Servs., Inc., 142 B.R. at 430

(asserting that "if necessary, the exercise of [the Bankruptcy Court's] equitable powers under 11 U.S.C. § 105 allows for the appointment of a trustee during the gap period."). Courts have appointed Chapter 11 trustees during the gap period in order to prevent or stop gross mismanagement or suspected fraudulent activity. For example, in In re Prof'l Accountants Referral Servs., Inc., the Court appointed a trustee to prevent further harm to the debtor's estate and its creditors where the debtor's current management seemed to be working at odds with the success of the corporate entity. That is, the court found that, "as opposed to fulfilling his fiduciary duties, [the company's chief officer] had been engaged in a substantially similar and competing business…" *Id*. at 429.

The Honorable Gregg W. Zive granted a motion to appoint a Chapter 11 trustee in an involuntary case during the gap period where the petitioning creditors asserted gross mismanagement and fraud on the part of the company's CEO. In re E-Z Pay Servcs., Inc., Case No. BK-S-06-50567 (Bankr. D. Nev. Aug.23, 2006). In that case, despite significant unresolved legal issues (including the question of whether venue was proper in Nevada), within days of the filing of the involuntary petition, the court heard the motion to appoint a "gap period" trustee on shortened notice, and ruled that "the Office of the United States Trustee should appoint a Chapter 11 trustee as soon as possible." *Id*. As discussed throughout this Motion, similar circumstances exist in this case, and it is imperative that a Chapter 11 trustee be appointed in order to stem the current gross mismanagement, preserve Debtor's assets and protect its creditors from further harm.

**B.  It Is Necessary and Appropriate To Appoint a Permanent Chapter 11 Trustee.**

Section 1104(a) of the Bankruptcy Code provides, in part, that the Court shall appoint a Chapter 11 trustee if one of the following standards is satisfied: (1) appointment "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case . . ."; or (2) appointment because it is "in the interest of creditors, any equity security holders, and other interests of the estate . . .." 11 U.S.C. § 1104(a).

A Chapter 11 debtor and its managers owe fiduciary duties to the debtor's estate and its creditors. In re Centennial Textiles, Inc., 227 B.R. 606, 612 (S.D.N.Y. 1998). "As fiduciaries, the

debtor in possession and its managers are obligated to treat all parties to the case fairly, maximize the value of the estate, and protect and conserve the debtor's property." In re Nat'l R.V. Holdings, Inc., 390 B.R. 690 (Bankr. C.D. Cal. 2008), quoting Centennial Textiles, 227 B.R. at 612. "In the appropriate case, the appointment of a trustee is a power which is crucial for the Court to exercise in order to preserve the integrity of the bankruptcy process and to insure that the interest of creditors are served." In re Intercat, Inc., 247 B.R. 911, 920 (Bankr. S.D. Ga. 2000). Where there is doubt about management's ability to carry out its fiduciary duties, appointment of a trustee is the appropriate remedy. In re Morpheus Lights, Inc., 228 B.R. 449, 454 (Bankr. N.D. Cal. 1998) (citations omitted).

Mr. Astengo and Mr. Powell, as management of the Debtor and EEE, have a duty to protect the best interests of Debtor's creditors by maximizing the value of EEE. However, they have patently and deliberately failed to do so. Mr. Astengo and Mr. Powell have chosen to pursue a path that serves only their interests and severely damages the development of EEE, while in turn diminishing Debtor's value. This inherent conflict provides overwhelming "cause" to appoint a Chapter 11 trustee to collect needed recoveries from Mr. Astengo and Mr. Powell, to restore order to Debtor's affairs and to get EEE back on track. It is clearly in the creditors' best interests to have an independent fiduciary carry out management of Debtor and EEE's affairs.

    (i) *The Facts Before The Court Provide Overwhelming Support For The Appointment of a Chapter 11 Trustee.*

A determination of "cause" under section 1104(a)(1) of the Bankruptcy Code "is within the discretion of the court [based on] various interests involved in the bankruptcy proceeding." In re Bellevue Place Assocs., 171 B.R. 615, 623 (Bankr. N.D. Ill.); *see also* Comm. of Dalkon Shield Claimants v. A.H. Robins Co. Inc., 828 F.2d 239, 242 (4th Cir. 1987). For example, the Court may consider pre-petition activity as part of its section 1104 determination. *See* In re Okla. Refining Co., 838 F.2d 1133, 1136 (10th Cir. 1988); *see also* In re Rivermeadows Assocs. Ltd., 185 B.R. 615, 619 (Bankr. D. Wyo. 1995) ("the [Bankruptcy] Code is clear that the prepetition conduct of the debtor's management may be the sole deciding factor").

Courts also consider the existence of other factors, including, but not limited to: (a) conflicts

of interest, including inappropriate relations between corporate parents and subsidiaries; (b) misuse of assets and funds; (c) inaccurate and inadequate record keeping and reporting; (d) non-filing of required documents, including lack of adequate disclosure; (e) various instances of conduct found to establish fraud or dishonesty; (f) failure to make required payments; (g) lack of credibility and creditor confidence; and (h) extreme acrimony and deep-seated animosity among the debtors and their creditors. In re Clinton Centrifuge, Inc., 85 B.R. 980, 985 (Bankr. E.D. Pa. 1988), citing 5 Bankr. Service, L. Ed. § 41.30 at 49-50 (1987); *see*, *e.g.*, In re Lowenschuss, 171 F.3d 673, 685 (9th Cir. 1999) (debtor's prepetition transfer of assets from his pension plan out of Pennsylvania in order to avoid the jurisdiction of the Pennsylvania courts was "cause" for appointing a Chapter 11 trustee); In re McCall, 34 B.R. 68, 69 (Bankr. E.D. Pa. 1983) (granting request for Chapter 11 trustee because of debtor's incompetence and gross mismanagement of its affairs, coupled with the ongoing failure to pay monthly mortgage that diminished the sole valuable estate asset).

Once "cause" is found by a court, the appointment of a trustee under section 1104(a)(1) of the Bankruptcy Code is mandatory. *See* Rivermeadows Assocs., 185 B.R. at 617. Here, the scores of conflicts, mismanagement and incompetence of Debtor's current self dealing managers could not be more striking. Value will not be maximized if such self-dealing behavior by controlling insiders is allowed to continue. A disinterested party must be put in place to ensure that the value of EEE is being maximized. By turning over decision-making authority to a Chapter 11 trustee, further losses may be averted and EEE can be salvaged for the benefit of Debtor's creditors, thus restoring justice to the case.

  (ii) *Even if the Court Determines That "Cause" Does Not Exist, Appointing Chapter 11 Trustee is in the Best Interests of Creditors Under Section 1104(a)(2) of the Bankruptcy Code*

Section 1104(a)(2) provides a "flexible standard for appointment of a trustee even when no cause exists." *See* Bellevue Place Assocs., 171 B.R. at 623; *see also In re V. Savino Oil & Heating Co.*, 99 B.R. 518, 527 n.11 (Bankr. E.D.N.Y. 1988) ("factors constituting a basis for appointing a trustee under § 1104(a)(2) are amorphous, diverse, and necessarily involve a great deal of judicial discretion."). The standard affords the Bankruptcy Court "particularly wide

discretion" to look to the practical realities and necessities involved in appointing a trustee. *See* Bellevue Place Assocs., 171 B.R. at 623. Factors often used to determine whether appointment of a Chapter 11 trustee is in the creditors' best interests include: (1) the debtor's trustworthiness; (2) the debtor's past and present performance and prospects for the debtor's rehabilitation; (3) the confidence, or lack thereof, of the business community and creditors in present management; and (4) the benefits derived by the trustee's appointment, balanced against the cost of appointment. *See* In re Ionosphere Clubs, Inc., 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990); In re Madison Mgmt. Group, Inc., 137 B.R. 275, 282 (Bankr. N.D. Ill. 1992). For example, in *Petralex*, a trustee was appointed under section 1104(a)(2), because the court found that the debtor could notcontinue its operations. The debtor's inability to operate was a result of the board being deadlocked, being unable to resolve financing problems, and not being able to operate profitably. *See* In re Petralex Stainless, Ltd., 78 B.R. 738, 744 (Bankr. E.D. Pa. 1987). As the *Petralex* court noted, "[u]nder such chaotic circumstances, a disinterested trustee can impartially assess [Debtor's] conditions and work with the warring factions, thus facilitating the decision making process." *Id.* at 745.

In this case, the involuntary Chapter 11 proceeding is the best and last way to preserve Debtor and EEE, and minimize any further degradation of EEE and risk of loss. Creditors in this case will enormously benefit from the appointment of a Chapter 11 trustee, because an independent third party can make objective and rational business decisions. A Chapter 11 trustee will have control over management of EEE and allocation of funds. Moreover, a Chapter 11 trustee will restore confidence in EEE. Finally, a Chapter 11 trustee will be able to forge ahead with the operation of EEE and develop and confirm a plan of reorganization or liquidation that will maximize the value of the estate, to the benefit of its creditors.

DATED this 16th day of December, 2015.

DARBY LAW PRACTICE, LTD.

By: */s/ Kevin A. Darby, Esq.*
KEVIN A. DARBY, ESQ.
Counsel for Petitioning Creditors
and Joining Creditors